Jorge Alejandro Rojas
Rojas.jorge96@gmail.com
Plaintiff in Pro Se
557 Cambridge Way
Bolingbrook, IL 60440
424-219-1582



# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE ALEJANDRO ROJAS,<br><br>        Plaintiff,<br><br>    v.<br><br>MARKETIZO MEDIA, and MATIAS OSCAR,<br><br>        Defendants. | Case No. 2:23-cv-07695-FLA-BFM<br><br>**AMENDED COMPLAINT FOR:**<br><br>1. VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 |

Plaintiff, Jorge Alejandro Rojas, files this Amended Complaint[1] under the Telephone Consumer Protection Act, 47 U.S.C. § 227, and its implementing regulations, 47 C.F.R. § 64.1200, against Defendants Marketizo Media ("Marketizo") and Matias Oscar ("Oscar") collectively "Defendants", and alleges based on personal knowledge, information, and belief:

/ / /

---

[1] Plaintiff files this Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1)(A). Plaintiff, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), terminates and *dismisses with prejudice* Defendants Centerfield Media Parent, Inc, Kris Barton, John Gerald Holland, and Brad Green, and adds the parties Marketizo Media and Matias Oscar, who Plaintiff alleges are liable for the conduct alleged in the original Complaint, and this Amended Complaint.

# INTRODUCTION

1. As the Supreme Court has explained, Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019. The States likewise field a constant barrage of complaints. For nearly 30 years, representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the "TCPA", generally prohibits robocalls to cell phones and home phones. *See Barr v. Am. Ass'n of Political Consultants,* 140 S. Ct. 2335, 2343 (2020).

2. Plaintiff brings this action against Defendants for violations of the TCPA, 47 U.S.C. § 227, and its implementing regulations, 47 C.F.R § 64.1200.

3. Plaintiff files this Amended Complaint which is related to the conduct alleged in the original Complaint. The Amended Complaint asserts the same claims against a different set of Defendants, who Plaintiff has, through additional investigation since the filing of the original complaint, to be responsible for the conduct alleged.

4. Marketizo and Oscar make telemarketing phone calls for other individuals and companies to promote their services, or further subcontract and outsource those services.

5. This case involves a campaign by Defendants to obtain business via itself or affiliates making telemarketing calls concerning life insurance and final expense insurance.

# JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331.

7. This Court has personal jurisdiction over Defendants as they regularly and systemically conduct business in the state of California. Specifically, the Defendants conduct significant business in the State. The wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

8. Some of the telephone calls Plaintiff received from Defendants were from "in district" telephone numbers, and as explained more fully below, Plaintiff believes were made based upon the (mistaken) belief that he continued being located within this District, where he previously resided.

9. Venue is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

10. Plaintiff Jorge Alejandro Rojas is a natural person residing in Bolingbrook, IL 60440, and is a citizen of the State of Illinois. Plaintiff previously resided within this District.

11. Defendant Marketizo Media ("Marketizo") is an entity which upon information and belief is located in Idaho, with a principal address of 2535 Woodwill Way, Pocatello, Idaho 83201.

12. Defendant Matias Oscar ("Oscar") is the CEO of Marketizo, and is located at the same address.

13. Defendants are each a person as defined by 47 U.S.C. § 153(39).

14. Defendants acted through their agents, affiliates, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

## STATUTORY BACKGROUND

15. The TCPA makes it unlawful to make calls to any cellular or residential line using an artificial or prerecorded voice, without the call recipient's prior express consent. *See* 47 U.S.C. § 227(b); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012).

16. The TCPA makes it unlawful to make calls using an automatic telephone dialing system ("ATDS") without the call recipient's prior express consent.

17. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. It ordered that:

[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]" *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

18. The TCPA provides a private cause of action to persons who receive such automated or pre-recorded calls. *See* 47 U.S.C. § 227(b)(3).

19. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

20. A listing on the Registry "must be honored indefinitely, or until the registration is canceled by the consumer or the telephone number is removed by the database administrator." *Id.*

21. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers whose numbers are on the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R § 64.1200(c)(2).

22. The TCPA's definition of telephone solicitation applies to the "initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4).

23. The TCPA's definition of unsolicited advertisement applies to "means any material advertising the commercial availability or quality of any property, goods, or

services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

24. Under the TCPA, an individual may be personally liable for the acts alleged in the Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, inter alia: "[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person.*" (*emphasis* added)

25. When considering individual officer liability under the TCPA, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

26. Individual Defendants directed and oversaw the telemarketing activity in progress, including selecting any third-party affiliate to make the call, exercised control over those affiliates, and any other employees who made the telephone calls.

27. Employees can be held liable in TCPA actions for unlawful conduct.

28. The individual defendant in this case personally participated in the actions complained of by: (a) personally selecting the phone numbers that would be called; (b) approving the scripting that would be used on the calls; (c) selecting and managing the dialing equipment or supplier of the same used to make the calls; and (d) personally paying for the calls.

## FACTUAL ALLEGATIONS

29. Plaintiff has been informed that Marketizo is located at 2535 Woodwill Way, Pocatello, Idaho 83201, and is that Oscar is the CEO of Marketizo.

30. Plaintiff has been unable to locate a corporate entity with the name of Marketizo Media in corporate databases, including Idaho, Delaware, Wyoming, or a collection of various state databases available at https://opencorporates.com.

31. The website domain http://marketizomedia.com, which Plaintiff has been provided as being Marketizo's, was at one point active and contained content, but is now in a "parked" state.

32. Mr. Oscar's LinkedIn page, available at https://www.linkedin.com/in/matias-oscar-996b22229/, lists himself as CEO of Marketizo since February 2021.

33. Mr. Oscar's LinkedIn page lists a tag line of "Buying & Selling Calls For Insurance Verticals."

34. Mr. Oscar's LinkedIn page points to another page, which advertises him as holding himself out for various services, available at https://www.linkedin.com/services/page/594a35313408938ba3/.

35. The LinkedIn page above includes the following text in the "About" section, "Having 17 years of Sales and Marketing experience, Outbound call center, D2D sales, B2C-B2B leads generation, POS sales, Facebook marketing. Buying and Selling campaigns : Auto Insurance l Life Insurance | Health Insurance | Solar | Medicare |."

36. The LinkedIn page above includes the following text in the "Services provided" section "Digital Marketing Social Media Marketing Telecommunications Outsourcing Insurance Health Insurance Life Insurance Homeowners Insurance Auto Insurance Commercial Insurance."

37. To the extent that Oscar is operating without a corporate structure, Plaintiff alleges he has pierced the corporate veil and that Oscar is responsible for all the conduct.

38. To the extent that Oscar is operating with a corporate structure, Plaintiff alleges that Oscar is still liable for the conduct alleged herein under the typical

principles of the TCPA and officer liability, given that Oscar participated in the telemarketing scheme alleged in this action.

39. Plaintiff, upon identification of an alternative name for the corporate entity, will seek leave to amend or substitute the party name.

40. At all times relevant hereto, Plaintiff maintained and used a residential cellular telephone line, with phone number (424) XXX-1582. The phone number is not associated with a business and is used by Plaintiff solely.

41. Plaintiff is the account holder and customary user of his phone number.

42. Plaintiff registered his phone number on the Federal Do Not Call Registry on or around January 18, 2008.

43. Plaintiff registered his phone number on the Do Not Call list to obtain solitude from invasive and harassing telemarketing calls. The calls prevented Plaintiff from using his phone for legitimate purposes.

44. Plaintiff also alleges that Defendants may have made other telephone calls prior to the Call 1 identified below, which will be identified further in discovery.

45. Plaintiff alleges that the Defendants directed their conduct at this district because they made telephone calls to the Plaintiff, who has an "in district" telephone number, based upon the false impression that he continues to reside herein.

46. Defendants have an office within this District – and their privacy policy and terms of conditions located on their website identify Los Angeles as a place of business.

47. Moreover – Defendants are registered to do business with the California Secretary of State, and provide the same address as a principal place of business.

48. Plaintiff previously resided within this District, in Torrance, California, from 1996 to approximately 2014. Plaintiff maintains a 424 telephone number, and that is the telephone number called by the Defendants. *See Luna v. Shac, LLC*, 2014 U.S. Dist. LEXIS 96847, *11 (N.D. Cal. July 14, 2014) (finding purposeful direction "where Shac intentionally sent text messages directly to cell phones with California based area codes, which conduct allegedly violated the TCPA and gave rise to this action, Shac expressly

aimed its conduct at California."). *Branham v. ISI Alarms, Inc.*, 2013 U.S. Dist. LEXIS 124933, *28 (E.D. N.Y. Aug. 30, 2013) (holding that the defendants should have anticipated that the use of a system "to call a New York cell-phone number could subject them to being hauled into court in New York."). Plaintiff also has a prior connection to this District based upon his prior residence within it.

49. **Call 1.** On or about September 28, 2022, at 7:59 AM Pacific time, Plaintiff received a telephone call from Defendants, or an agent or affiliate acting on their behalf, from 302-660-0673.

50. When Plaintiff answered the telephone, and stating a greeting multiple times, he heard a beep tone play, and then the call terminated.

51. A search online of this telephone number reveals several sites which report the telephone number as being scam likely, https://lookup.robokiller.com/p/302-660-0673, https://www.nomorobo.com/lookup/302-660-0673.

52. **Call 2.** On or about October 10, 2022, at 12:29 PM Pacific time, Plaintiff received a telephone call from Defendants, or an agent or affiliate acting on their behalf, from 302-660-0673.

53. When Plaintiff answered the telephone, he heard a beep, and stated a greeting multiple times. Following a longer than natural pause, Plaintiff heard a representative stating that they were with the "Senior Care Center" and were calling regarding a final expenses insurance plan. The call ultimately terminated.

54. **Call 3.** On or about May 17, 2023, at 12:25 PM Pacific time, Plaintiff received a telephone call from Defendants, or an agent or affiliate acting on their behalf, from 925-332-4720.

55. A search online of this telephone number reveals several sites which report the telephone number as being scam likely, https://lookup.robokiller.com/p/925-332-4720.

56. When Plaintiff answered the telephone, and stating a greeting multiple times, he heard a beep, followed by a male pre-recording play, concerning medicare benefits and final expense insurance.

57. **Call 4.** On or about July 14, 2023, at 8:35 AM Pacific time, Plaintiff received a telephone call from Defendants, or an agent or affiliate acting on their behalf, from 424-367-5202.

58. When Plaintiff answered the telephone, and stating a greeting multiple times, he heard a beep, followed by a male named Mark with a foreign accent with a call center like noise in the background advertise "low cost" final expense insurance.

59. **Call 5.** On or about July 19, 2023, at 12:52 PM Pacific time, Plaintiff received a telephone call from Defendants, or an agent or affiliate acting on their behalf, from 424-289-4716.

60. A search online of this telephone number reveals several sites which report the telephone number as being scam likely, https://www.nomorobo.com/lookup/424-289-4716.

61. This call was identified as "Maybe: Junk" on Plaintiff's phone.

62. When Plaintiff answered the telephone, and stating a greeting multiple times, he heard a beep, followed by a female pre-recording by the name of Aimee play concerning final expense insurance. Plaintiff heard several beeps play throughout the call.

63. **Call 6.** On or about July 27, 2023, at 7:32 AM Pacific time, Plaintiff received a telephone call from Defendants, or an agent or affiliate acting on their behalf, from 260-231-6697.

64. A search online of this telephone number reveals several sites which report the telephone number as being scam likely, https://www.nomorobo.com/lookup/260-231-6697, https://lookup.robokiller.com/p/260-231-6697.

65. This call was identified as "Maybe: Junk" on Plaintiff's phone.

66. When Plaintiff answered the telephone, and stating a greeting multiple times, he heard a beep, followed by a "John" with "American Benefits" state that he was selling final expense insurance. Plaintiff heard several beeps play throughout the call and the call ultimately terminated.

67. **Call 7.** On or about July 27, 2023, at 10:01 AM Pacific time, Plaintiff received a telephone call from Defendants, or an agent or affiliate acting on their behalf, from 930-210-4611.

68. A search online of this telephone number reveals several sites which report the telephone number as being scam likely, https://www.nomorobo.com/lookup/930-210-4611, https://lookup.robokiller.com/p/930-210-4611.

69. This call was identified as "Maybe: Junk" on Plaintiff's phone.

70. When Plaintiff answered the telephone, and stating a greeting multiple times, he heard a beep, followed by a pre-recorded female named "Aimee" state that she was selling final expense insurance. The call attempted to connect to a representative but ultimately terminated because it said that the number was not in service.

71. **Call 8.** On or about July 31, 2023, at 6:42 AM Pacific time, Plaintiff received a telephone call from Defendants, or an agent or affiliate acting on their behalf, from 864-949-4940.

72. This call was identified as "Junk" on Plaintiff's phone.

73. When Plaintiff answered the telephone, and stating a greeting multiple times, he heard a beep, followed by a pre-recorded male named "Alex" state that he was selling final expense insurance. The call attempted to connect to a representative but ultimately terminated.

74. **Call 9.** On or about August 7, 2023, at 9:34 AM Pacific time, Plaintiff received a telephone call from Defendants, or an agent or affiliate acting on their behalf, from 309-302-3369.

75. A search online of this telephone number reveals several sites which report the telephone number as being scam likely, https://www.nomorobo.com/lookup/309-302-3369, https://lookup.robokiller.com/p/309-302-3369.

76. This call was identified as "Junk" on Plaintiff's phone.

77. When Plaintiff answered the telephone, he heard a beep, followed by a male pre-recording named "Alex" advertising final expense insurance.

78. **Call 10.** On or about August 15, 2023, at 9:26 AM Pacific time, Plaintiff received a telephone call from Defendants, or an agent or affiliate acting on their behalf, from 754-310-5055.

79. A search online of this telephone number reveals several sites which report the telephone number as being scam likely, https://lookup.robokiller.com/p/754-310-5055.

80. This call was identified as "Junk" on Plaintiff's phone.

81. Plaintiff answered this call and heard a beep, and a male pre-recording named Alex played concerning final expense insurance.

82. **Call 11.** On or about August 15, 2023, at 10:28 AM Pacific time, Plaintiff received a telephone call from Defendants, or an agent or affiliate acting on their behalf, from 754-310-5179.

83. A search online of this telephone number reveals several sites which report the telephone number as being scam likely, https://www.nomorobo.com/lookup/754-310-5179.

84. Plaintiff did not answer this telephone call but alleges it was from Defendants or an agent or affiliate acting on their behalf given the proximity to the other calls at issue in this case and the similarity in telephone number.

85. **Call 12.** On or about August 30, 2023, at 11:01 AM Pacific time, Plaintiff received a telephone call from Defendants, or an agent or affiliate acting on their behalf, from 408-709-5046.

86. A search online of this telephone number reveals several sites which report the telephone number as being scam likely, https://www.nomorobo.com/lookup/408-709-5046.

87. This call was identified as "Scam Likely" on Plaintiff's phone.

88. When Plaintiff answered the telephone, and stating a greeting multiple times, he heard a beep, and heard an advertisement for medicare and senior benefits. Plaintiff was transferred to a "Sam" who knew Plaintiff's Illinois address and said that he would get a call back "notwithstanding" any do not call registry listing.

89. **Call 13.** On or about September 12, 2023, at 3:34 PM Pacific time, Plaintiff received a telephone call from Defendants, or an agent or affiliate acting on their behalf, from 760-359-2730.

90. A search online of this telephone number reveals several sites which report the telephone number as being scam likely, https://directory.youmail.com/phone/760-359-3145.

91. This call was identified as "Scam Likely" on Plaintiff's phone.

92. When Plaintiff answered the telephone, and stating a greeting multiple times, he heard a beep, before being connected to a "Sam" who was selling final expense insurance. Plaintiff was transferred to a "Rachel" who stated she was with "Solid Quote" and was selling final expense and life insurance.

93. Rachel stated she was not able to find an agent to sell Plaintiff insurance, so she asked Plaintiff if she could send him a text with more information.

94. Rachel caused a text message to be sent to Plaintiff, which included a link to the domain of "quote.io."

95. The "quote.io" website Privacy Policy includes an address of 12130 Millennium Drive, Ste 600 Los Angeles, CA 90094.

96. The "quote.io" website Privacy Policy states in part "This Privacy Policy applies to all users of our products and services ("Consumers"), including those who

have used our website ("Web Site"), which is owned by Centerfield Media Parent, Inc., a Delaware corporation ("Owner")."

97. The lead provided to Centerfield Media Parent, Inc, was provided by Marketizo, and such call was made by Marketizo.

98. Marketizo contracts with companies to make telemarketing calls on their behalf.

99. Marketizo's website, marketizomedia.com, which is now in a "parked" state, states that it supports customers who require marketing services. https://web.archive.org/web/20230331161918/https://marketizomedia.com/services.

100. Plaintiff alleges all the telephone calls here were made by the Defendants, or one of their agents, because of the similarities in scripts, telephone numbers, agent names, and more.

101. Plaintiff alleges that the telephone calls were made with an ATDS system and/or a pre-recorded message.

102. To the extent that Defendants are utilizing a third-party call center to make calls on its behalf, Defendants named here are vicariously liable for their conduct, as that conduct was made for their own benefit.

103. The call was made for the purposes of soliciting the services of an organization which sells individuals medicare services/insurance, and/or final expense insurance.

104. Courts have relied in part on the "the general tort rule that 'corporate officers or agents are personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body.'" *Universal Elections*, 787 F. Supp. 2d at 416 (internal citations omitted); *see also Am. Blastfax, Inc*., 164 F. Supp. 2d at 898.

105. The individual Defendant in this action engaged in the operation of the telemarketing scheme.

106. The conduct alleged in this action was made willful and knowingly.

107. The TCPA requires telemarketers to provide training to their employees, contractors, etc., and Defendants have failed to properly train the same.

108. Plaintiff did not have a prior business relationship with Defendants.

109. Defendants did not have any consent to call Plaintiff.

110. Defendants are not an organization exempt from the TCPA.

111. Defendants' calls to Plaintiff were made for the purpose or intention of being a "telephone solicitation."

112. Defendants' calls to Plaintiff were made for the purpose or intention of being an "unsolicited advertisement."

113. Upon information and belief, Plaintiff received additional calls from Defendants and their affiliates not included above.

114. Plaintiff alleges that Defendants train their affiliates to avoid divulging too much information to leads and customers to evade TCPA liability.

115. In total, Defendants and/or their affiliates placed at least thirteen (13) telephone solicitation calls to Plaintiff.

116. As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation, and a sense that his privacy has been invaded by Defendants.

117. Defendants have a pattern and practice of failing to comply with the TCPA.

118. The foregoing acts and omissions were in violation of the TCPA.

119. Defendants are engaging in violations of the TCPA to get business.

120. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227, Plaintiff is entitled to treble damages of up to $1,500.00 for each call made in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).

121. The acts and omissions of Defendants constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

122. Plaintiff seeks injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future.

123. Plaintiff is also entitled to an award of costs.

124. Defendants' calls were not made for "emergency purposes."

125. Defendants' calls to Plaintiff were made without any prior express written consent.

126. Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton, and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

127. The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively, and fraudulently and absent bona fide error, lawful right, legal defense, legal justification, or legal excuse.

128. As a result of the above violations of the TCPA, Plaintiff has suffered losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

129. Plaintiff, in discovery will better identify how many telephone calls were made by Defendants and or their agents or affiliates, and requests leave to amend the complaint after identifying the instance count.

### COUNT 1. Violation of the TCPA's Automated Telemarketing Call Provisions, 47 U.S.C. § 227(b)(1)

130. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

131. Defendants or one of its affiliates or vendors called Plaintiff's cellular telephone using an "automatic telephone dialing system" and/or a pre-recorded voice as defined by the TCPA on at least thirteen (13) occasions in violation of 47 U.S.C. § 227(b)(1), without Plaintiff's prior express written consent.

132. Plaintiff was statutorily damaged at least thirteen (13) times under 47 U.S.C. § 227(b)(3)(B) by the Defendants by the telephone calls described above, in the amount of $500.00 for each.

133. Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under 47 U.S.C. § 227(b)(3)(C) for these willful or knowing violations.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendants, jointly and/or severally, in an amount of $19,500.00 plus costs and any other remedy deemed appropriate.

### COUNT 2.
### Violation concerning Do Not Call List, 47 U.S.C. 227(c)

134. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

135. By placing at least thirteen telemarketing calls to the Plaintiff, whose number is on the Do-Not-Call registry, failing to have a written Do-Not-Call policy, failing to maintain the Plaintiff on their Do-Not-Call list, failing to provide proper training to their employees, Defendants, jointly and severally, violated 47 U.S.C. § 227(c)(5) by violating the implementing regulations codified in 47 C.F.R. § 64.1200(c) and (d).

136. Defendants called Plaintiff at least thirteen (13) times notwithstanding him being on the Do Not Call list for several years.

137. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute violations of the TCPA, 47 U.S.C. § 227(c), codified at 47 C.F.R. § 64.1200, by, inter alia, refusing to scrub against the National Do-Not-Call registry, refusing to maintain Plaintiff's number on an internal Do-Not-Call list, and failing to have a Do-Not-Call policy.

138. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the TCPA, 47 U.S.C. § 227(c), Plaintiff is entitled to an award of $500 in damages for each and every call and violation made to his telephone number in violation of the TCPA's implementing regulations codified at 47 C.F.R. § 64.1200, pursuant to 47 U.S.C. § 227(c)(5)(B).

139. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the TCPA, 47 U.S.C. § 227(c), by making calls in violation of any of the TCPA's implementing regulations in the future.

140. The Defendants' violations were knowing and/or willful. Accordingly, the Plaintiff seeks up to treble damages of the $500 per violation award, as provided in 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(c)(5).

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendants, jointly and or severally, in an amount of $19,500.00 plus costs and any other remedy deemed appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of him and against Defendants, jointly and/or severally, in an amount to be more fully determined at trial, but at least $39,000.00 as permitted by statute, as follows:

A. All actual damages Plaintiff suffered,

B. Statutory damages of $500.00 per call for every violation of 47 U.S.C. § 227(b),

C. Treble damages of $1,500.00 per call for each violation determined to be willful and/or knowingly pursuant to 47 U.S.C. § 227(b)(3)(C),

D. Statutory damages of $500.00 per call for every violation of 47 U.S.C. § 227(c),

E. Statutory damages of $500 for each violation of 47 C.F.R. § 64.1200,

F. Treble statutory damages of $1,500.00 per violation of the TCPA's implementing regulations,

G. All reasonable witness fees, court costs, pre-judgment and post-judgment interest, and other litigation costs incurred by Plaintiff,

H. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future,

I. Leave to amend this Complaint to conform to the evidence presented at trial,

J. Any other relief this Court deems proper.

Respectfully submitted,

Dated: October 17, 2023

JORGE ALEJANDRO ROJAS
Rojas.jorge96@gmail.com
Plaintiff in Pro Se
557 Cambridge Way
Bolingbrook, IL 60440
(424) 219-1582

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this filing will be served on the newly added Defendants via service of process.

Dated: October 17, 2023

JORGE ALEJANDRO ROJAS